UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FABIAN ALFONSO INLAGO TOCAGON,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, Superintendent, Plymouth Correctional Facility, PATRICIA HYDE, Field Office Director, TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, and KRISTI NOEM, U.S. Secretary of Homeland Security, and PAMELA BONDI, Attorney General of the United States<br><br>Respondents. | Civil Action No. 25-cv-12453-MJJ |

### MEMORANDUM OF DECISION AND ORDER

September 29 2025

JOUN, D.J.

Fabian Alfonso Inlago Tocagon ("Mr. Inlago Tocagon" or "Petitioner") petitions the Court under 28 U.S.C. § 2241 and the Due Process Clause of the Fifth Amendment for relief from detention at the Plymouth County Correctional Facility. On September 23, 2025, I held a hearing on the petition. [Doc. No. 13].

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Mr. Inlago Tocagon is a citizen of Ecuador. [Doc. No 1 at ¶ 15; Doc. No. 9-1 at ¶ 6; Doc. No. 10 at ¶ 1]. Upon his entry in September of 2023, Mr. Inlago Tocagon and his sister were detained by immigration officials pursuant to Section 212(a)(6)(A)(i) or 8 U.S.C. § 1182(a)(6)(A)(i) and then released. [Doc. No 1 at ¶ 16; Doc. No. 9-1 at ¶ 7; No. 10 at ¶ 1]. The

1

Order of Release on Recognizance stated that Mr. Inlago Tocagon was "arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions . . . ." [Doc. No. 12-1 at 1].

On November 8, 2023, ICE enrolled Mr. Inlago Tocagon into an alternative to detention ("ATD") reporting program. [Doc. No. 9-1 at ¶ 8]. On June 19, 2024, Mr. Inlago Tocagon filed a Motion to Change Venue from the Buffalo Immigration Court to the Boston Immigration Court stating his intent to apply for Special Immigrant Juvenile Status. [Doc. No. 1 at ¶ 18]. On June 27, 2024, the change of venue was granted. [*Id*. at ¶ 19]. In early August 2024, Petitioner filed a Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant, ("Form I-360") for the Special Immigrant Juvenile ("SIJ") classification with the United States Citizenship and Immigration Service ("USCIS"). [*Id*. at ¶ 20; Doc. No. 9-1 at ¶ 10; No. 10 at ¶ 5]. Mr. Inlago Tocagan's petition was granted on October 31, 2024, with a grant of deferred action for four years. [Doc. No. 1 at ¶ 20; Doc. No. 9-1 at ¶ 11; No. 10 at ¶ 1].

ICE sent Mr. Inlago Tocagon emails of a July 3, 2025, appointment with ICE on November 7, 2024, June 19, 2025, and June 26, 2025, to his email address. [Doc. No. 9-1 at ¶ 12]. Mr. Inlago Tocagon assumed, wrongly, that he had the same November 7, 2025, check-in as his sister, given that they both had been checking in at the same time and were on at least two prior occasions given the same check-in date. [Doc. No. 10 at ¶ 4]. In the early hours of Saturday, August 30, 2025, Mr. Inlago Tocagon was detained by ICE, while on his way to work. [Doc. No. 1 at ¶ 21]. ICE served Mr. Inlago Tocagon with an I-200, Warrant for Arrest. [Doc. No. 9-1 at ¶ 13; Doc. No. 12-2 at 1; No. 10 at ¶ 8]. The Warrant for Arrest stated, "Any immigration

2

officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." [Doc. No. 12-2 at 1]. ICE detained Mr. Inlago Tocagon and booked him into Plymouth County Correctional Facility, in Plymouth Massachusetts on the same day. [*Id*.].

On September 5, 2025, Mr. Inlago Tocagon filed a motion for a custody redetermination, and a hearing was scheduled for September 11, 2025, in Chelmsford Immigration Court. [Doc. No. 9 at 3]. In light of *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), Mr. Inlago Tocagon withdrew his bond request at the September 11, 2025 hearing, and therefore no action was taken on that request. [*Id*. at 3 n.3; Doc. No. 10 at 6].

## II. ANALYSIS

### A. Respondents

Respondents move to dismiss all Respondents other than Respondent Moniz. "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); *see also Vasquez v. Reno,* 233 F.3d 688, 693 (1st Cir. 2000) (holding that an alien detained under the immigration laws may not designate the Attorney General as the respondent to his habeas petition). Accordingly, the Petition is DISMISSED as to all Respondents except Respondent Moniz, who is the Superintendent of the Plymouth Facility where Mr. Inlago Tocagon is being held.

### B. Administrative Exhaustion

Mr. Inlago Tocagon argues that exhaustion is futile due to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) ("*Hurtado*") and the Immigration Judge's comments at the September 11, 2025 hearing. I agree.

3

"Where the courts have latitude, a court may hear unexhausted claims in circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (cleaned up). Such a circumstance "exists when substantial doubt exists about whether the agency is empowered to grant meaningful redress" as well as "when the potential decisionmaker ... can be shown to have predetermined the issue" *Id*. (cleaned up). Here, the parties do not dispute that the IJ indicated to Mr. Inlago Tocagon that she was denying all cases for bond pursuant to *Hurtado* and that even if she had authority, she would still deny Mr. Inlago Tocagon's request without reaching the merits. *See McCarthy v. Madigan*, 503 U.S. 140, 147 (1992) (citing *Gibson v. Berryhill*, 411 U.S. 564, 575, n.14, (1973)) ("[A]n administrative remedy may be inadequate 'because of some doubt as to whether the agency was empowered to grant effective relief.'"). As such, I find that Mr. Inlago Tocagon's liberty interests and his risk of suffering irreparable harm if he cannot receive immediate judicial consideration of his claim weigh heavily against requiring administrative exhaustion. Thus, waiver of the exhaustion requirement is warranted.

C. **Detention**

Respondents contend that Mr. Inlago Tocagon is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) ("Section 1225(b)"),[1] while Mr. Inlago Tocagon contends that he is subject to discretionary detention under 8 U.S.C. § 1226(a) ("Section 1226(a)").[2]

---

[1] 8 U.S.C.A. § 1225(b)(2)(A) states, "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."

[2] 8 U.S.C.A. § 1226(a) states, "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."

It is not necessary for me to repeat the analysis done by Judge Kobick in *Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *5–7 (D. Mass. July 7, 2025). I agree "that the plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States." *Id*. at *7. Here, Mr. Inlago Tocagon was released on an Order of Recognizance pursuant to Section 1226(a) and then enrolled into an alternative to detention reporting program. More than a year later, while residing in the United States, Mr. Inlago Tocagon was arrested on a warrant issued under 8 U.S.C. § 1226(a). These facts make clear that Mr. Inlago Tocagon is not subject to Section 1225(b)(2)(A). Rather, he is subject to Section 1226(a)'s discretionary detention framework and is thus eligible for bond.

### D. SIJ Classification

Respondents also argue that classification as an SIJ does not provide any lawful status, prohibit detention, nor bar effectuation of a removal order. Before addressing this argument, I provide background of the SIJ classification.

> An SIJ is "an immigrant who is present in the United States" and:
>
> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>
> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>
> (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status ....

8 U.S.C. § 1101(a)(27)(J). "The protections afforded to children with SIJ status include an array of statutory and regulatory rights and safeguards, such as eligibility for application of adjustment of status to that of lawful permanent residents ("LPR"), exemption from various grounds of in admissibility, and robust procedural protections to ensure their status is not revoked without good cause." *Juarez Morales v. Noem*, No. 24-cv-12518, 2025 WL 1923096, at *3 (D. Mass. June 24, 2025). Furthermore,

> [f]or purposes of 8 U.S.C. § 1255(a), which describes adjustment of status, SIJ designees are "deemed ... to have been paroled into the United States." 8 U.S.C. § 1255(h)(1). Moreover, the INA automatically exempts SIJ designees from a set of generally applicable grounds of inadmissibility and provides that other grounds of inadmissibility also may be waived at the Attorney General's discretion. 8 U.S.C. §§ 1255(h)(2), 1182(a) . . . Additionally, Congress has granted SIJ designees various forms of support within the United States, such as access to federally funded educational programming and preferential status when seeking employment-based visas. *See id.* §§ 1232(d)(4)(A), 1153(b)(4).

*Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 163–64 (3d Cir. 2018).

> With regard to deferred action,
>
> "[d]ue to ongoing visa number unavailability, the protection that Congress intended to afford SIJs through adjustment of status is often delayed for years[.]" USCIS, Policy Alert PA-2022-10 (Mar. 7, 2022), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf. In light of this delay, USCIS's policy had been to consider granting deferred action on a case-by-case basis to SIJs who are ineligible to obtain adjustment of status solely due to unavailable immigrant visa numbers. *Id*. Recently, that policy changed, and currently "USCIS will no longer consider granting deferred action on a case-by-case basis to aliens classified as SIJs who are ineligible to apply for adjustment of status solely due to unavailable immigrant visas." USCIS, Policy Alert PA-2025-07 (June 6, 2025), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20250606-SIJDeferredAction.pdf. But despite the policy change, "aliens with current deferred action based on their SIJ classification will generally retain this deferred action, as well as retain their current employment authorization provided based on this deferred action, until the current validity periods expire". *Id*.
>
> . . .

> USCIS reserves the right to terminate grants of deferred action to SIJs "as a matter of discretion." USCIS, Policy Manual, vol. 6, pt. J., ch. 4 ¶ G.2. Examples of such discretion include where the petition for SIJ classification was approved in error and the petition is revoked, or where the prior deferred action and related employment authorization were granted in error. *Id.*

*Primero v. Mattivelo*, No. 25-cv-11442, 2025 WL 1899115 at *2 (D. Mass. July 9, 2025).

Although USCIS has discretion to terminate grants of deferred action to SIJS, it is undisputed that Mr. Inlago Tocagan's I-360 petition was granted on October 31, 2024, with a grant of deferred action for four years. At that time, Mr. Inlago Tocagon was deemed to have been paroled into the United States. *See* 8 U.S.C. § 1255(h)(1). These facts further affirm that Mr. Inlago Tocagon is subject to Section 1226(a)'s discretionary detention framework and is thus eligible for bond.

### A. *Matthews* Factors

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), sets out a three-part test that courts have used to assess due process challenges by individuals detained under Section 1226 seeking a bond hearing. *Doe v. Moniz*, No. 25-cv-12094, 2025 WL 2576819, at *10 (D. Mass. Sept. 5, 2025). Under *Matthews*, the three factors are: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Pertaining to the first prong, Mr. Inlago Tocagon's private interest in "freedom from imprisonment" is strong, given his I-360 petition was granted on October 31, 2024, with a grant of deferred action for four years. *Bermeo Sicha v. Bernal*, No. 25-cv-00418, 2025 WL 2494530

at *5 (D. Me. Aug. 29, 2025) (quoting *Hernandez-Lara v. Lyons*, 10 F.4th at 28). Pertaining to the second prong, when Mr. Inlago Tocagon was released from custody on Order of Recognizance, Respondents "necessarily determined that he was 'not a danger to the community or a flight risk.'" *Id*. at *6 (cleaned up). "Therefore, to re-detain him, the government had to show a change of circumstances.'" *Id*. While it is undisputed that Mr. Inlago Tocagon missed his check-in date, "[w]ithout a hearing on the basis for detention, there remains a risk that Mr. [Inlago Tocagon] is detained even though the circumstances do not warrant it." *Id*.

Pertaining to the third prong, the First Circuit has held, "the only way to constitutionally determine whether a particular noncitizen presents a flight risk involves a hearing before an IJ with properly allocated burdens of proof." *Id*. (citing *Hernandez-Lara*, 10 F.4th at 32–33). "Moreover, the public interest weighs against detention without a hearing." *Id*. (cleaned up). Thus, taken together, I find that the *Mathews* factors weigh in favor of affording Mr. Inlago Tocagon notice and an opportunity to be heard.

### E. Remedy

Respondents argue that Mr. Inlago Tocagon's remedy should be a bond hearing in Immigration Court. Mr. Inlago Tocagon argues that any order from this Court to the Boston Immigration Court would be an exercise in futility because the Immigration Court is bound by *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). However, Mr. Inlago Tocagon has provided no support to show that Mr. Inlago Tocagon would not receive a fair bond hearing upon this Court's order to do so under 8 U.S.C. § 1226(a). As such, I find that the appropriate remedy at this stage is a bond hearing before an IJ.

### III. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas is <u>GRANTED</u>. Respondents are <u>ORDERED</u> to provide Mr. Inlago Tocagan with a bond hearing under 8 U.S.C. § 1226(a) within 10 days of this Order. The Respondents are <u>ENJOINED</u> from denying bond to Mr. Inlago Tocagan on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2). The Respondents are further <u>ORDERED</u> to file a status report within 24 hours of the bond hearing, stating whether Mr. Inlago Tocagan has been granted bond, and, if his request for bond was denied, the reasons for that denial.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge